UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

————

| | | |
|---|---|---|
| MICHON D. HOUSTON, #316461, | ) | |
| | ) | |
| Plaintiff | ) | Case No. 1:07-cv-960 |
| | ) | |
| v. | ) | Honorable Janet T. Neff |
| | ) | |
| PATRICIA L. CARUSO, et al., | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| Defendants. | ) | |
| _____ | ) | |

This is a civil rights action brought *pro se* by a state prisoner under 42 U.S.C. § 1983.

Plaintiff is an inmate at the St. Louis Correctional Facility (SLF) located in St. Louis, Michigan. His

complaint concerns the rejection of magazines delivered to the prison addressed to plaintiff: Players

Girls Pictorial, King, and Scratch XXL. Plaintiff alleges that the following magazines were rejected:

(1) Players Girls Pictorial volume 27, parts 6, 7, 9, 10 and 12; (2) King, May 2007; and (3) Scratch

XXL, January/February and May/June 2007 issues. Plaintiff states that his rejected magazines

contain non-obscene heterosexual material and hand gestures prison officials interpreted as gang

signs. (Compl., ¶ 8). Plaintiff argues that Policy Directive 05.03.118 ¶ HH, subpart fifteen

(prohibiting photographs depicting actual or simulated sexual acts by one or more persons) and

subpart twenty-two (prohibiting mail depicting a sign or symbol of a designated security threat

group) are not supported by an adequate "causal nexus" between possession of the prohibited

material and a threat to security, good order, or impairment of rehabilitation. (Compl., ¶¶ 13, 18,

19, 22-23).

Plaintiff named eight defendants in his complaint, Patricia L. Caruso, Director of the Michigan Department of Corrections (MDOC) and seven MDOC employees at SLF:

(1)     Blaine C. Lafler, Warden;

(2)     A. Hull, Mailroom Supervisor;

(3)     M. Bennett, Mailroom Staff;

(4)     C. Porubsky, Mailroom Staff;

(5)     M. Ritz, Assistant Resident Unit Supervisor (ARUS);

(6)     W. Andersen,[1] Resident Unit Manager (RUM); and

(7)     K. Sheets, Grievance Coordinator.

Plaintiff alleges in Count I of his complaint that defendants Caruso, Lafler, and Anderson violated his First and Fourteenth Amendment rights.  (Compl. ¶¶ 70-83).  In Count II, he alleges that defendants Bennett, Hull, Porubsky, Ritz, and Sheets violated his First Amendment rights.  (*Id.* at ¶¶ 84-94).  Plaintiff sued defendants in their official and individual capacities and he seeks an award of monetary damages and injunctive relief.  (*Id.* at 2A, 4-4A).   The matter is now before me on defendants' motion for summary judgment.  (docket # 22).  Plaintiff has filed his response (docket #'s 26, 27, 28), and defendants' motion has long been ready for decision.  For the reasons set forth herein, I recommend that defendants' motion for summary judgment be granted, and that judgment be entered in defendants' favor on all plaintiff's claims.

---

[1]Defendant Andersen's name is misspelled in plaintiff's complaint as "Anderson."

**Applicable Standard**

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *S.S. v. Eastern Ky. Univ.*, 532 F.3d 455, 452 (6th Cir. 2008). The standard for determining whether summary judgment is appropriate is "whether 'the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *El Bey v. Roop*, 530 F.3d 407, 413 (6th Cir. 2008) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Smith v. Williams-Ash*, 520 F.3d 596, 599 (6th Cir. 2008).

When the party without the burden of proof seeks summary judgment, that party bears the initial burden of pointing out to the district court an absence of evidence to support the nonmoving party's case, but need not support its motion with affidavits or other materials "negating" the opponent's claim. *See Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 787 (6th Cir. 2000); *see also Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005). Once the movant shows that "there is an absence of evidence to support the nonmoving party's case," the nonmoving party has the burden of coming forward with evidence raising a triable issue of fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). To sustain this burden, the nonmoving party may not rest on the mere allegations of his pleadings. FED. R. CIV. P. 56(e); *see Helms v. Zubaty*, 495 F.3d 252, 255 (6th Cir. 2007). The motion for summary judgment forces the nonmoving party to present evidence sufficient to create a genuine issue of fact for trial. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472,

1478 (6th Cir. 1990). "A mere scintilla of evidence is insufficient; 'there must be evidence on which

a jury could reasonably find for the [non-movant].'" *Daniels v. Woodside*, 396 F.3d 730, 734 (6th

Cir. 2005) (quoting *Anderson*, 477 U.S. at 252); *see Bridgeport Music, Inc. v. WB Music Corp.*, 508

F.3d 394, 398 (6th Cir. 2007).

**Proposed Findings of Fact**

The following facts are beyond genuine issue.

**A.      January/February Issue of Scratch XXL**

On December 5, 2006, M. Bennett issued a notice of package/mail rejection regarding

the January/February 2007 issue of Scratch XXL magazine.  This notice advised plaintiff that the

magazine constituted prohibited incoming prisoner mail under Policy Directive  05.03.118 because

it contained a hand sign or symbol of a security threat group designated pursuant to Policy Directive

04.04.113.  (docket # 1, Ex. D).  On December 7, 2006, plaintiff requested an administrative hearing

regarding the rejection of this magazine.  (*Id.*).  On January 18, 2007, plaintiff received a hearing.

ARUS W. Ritz served as the hearing officer.  Defendant Ritz found that page 58 of this magazine

depicted a sign or symbol of a security threat group.  (docket # 1, Ex I).  Policy Directive

05.03.118(HH) prohibits prisoners from receiving mail that is a threat to security, good order, or

discipline of the facility, may facilitate or encourage criminal activity, or may interfere with the

rehabilitation of the prisoner.  "The following pose such risks within a correctional facility under all

circumstances and therefore shall be rejected . . . 21. Mail depicting a sign or symbol of a security

threat group."  Plaintiff "would not indicate a disposition for the magazine." (docket # 1, Ex. I).  The

hearing report advised plaintiff that he could appeal the hearing officer's decision through the

grievance procedure. (*Id.*). Under Policy Directive 05.03.118, ¶¶ MM, VV, plaintiff could have requested that this or any other rejected magazine be mailed to a person designated by the prisoner or be picked up by a person designated by the prisoner. (docket # 1, Ex A.). Because plaintiff refused to indicate his desired disposition of this magazine, "[t]he magazine would be destroyed after the prisoner ha[d] exhausted all administrative remedies." (*Id.*).

On January 29, 2007, plaintiff field a Step I grievance objecting to the rejection of the January/February issue of Scratch XXL magazine. (docket # 1, Ex. J, Grievance No. SLF 07-01-0164-27B). Plaintiff complained that the hearing officer's decision had been "based solely on policy and [had] not [been his] own determination." On January 30, 2007, SLF's Grievance Coordinator K. Sheets rejected plaintiff's grievance:

> Your Step 1 grievance regarding policy was received in this office on 1/29/2007 and was rejected [for] the following reason:
>
> Per PD-03.02.130, "A grievant may not grieve the content of policy or procedure; such grievances shall be rejected by the grievance coordinator." The grievant states in his grievance that "the decision was based solely on policy and not on [the hearing officer's] own determination." The entire grievance is based on this statement. Decisions made in hearings are BASED on policy and procedure[,] therefore this grievance is being denied as a nongrievable issue.

(docket # 1, Ex. K). Plaintiff appealed to Step II. On March 14, 2007, Warden Lafler denied plaintiff's Step II appeal:

> Investigation reveals that on review of the magazine, it was rightfully rejected in accordance with PD-05.03.118, Prisoner Mail, paragraph HH, which states, "Prisoners are prohibited from receiving mail that is a threat to the security, good order, or discipline of the facility, that may facilitate or encourage criminal activity, or that may interfere with the rehabilitation of the prisoner. The following pose such risks with a correctional facility under all circumstances and therefore shall be rejected: 21. Mail depicting a sign or symbol of a security threat group designated pursuant to PD-04.04.113 'Security Threat Groups.'"

It is noted that the January/February issue of Scratch Magazine has been sent to the CFA Deputy Director for possible placement on [the] Restricted Publications list. As of this date, notification has not been received.

Based on the above findings, the Grievant has been provided with appropriate notification and hearings were conducted in accordance with policy. It is with this finding that the Step II Appeal is denied.

(docket # 1, Ex. K).   The evidence before the court does not include the result of a Step III appeal.

### B.    May 2007 Issue of King

On March 8, 2007, C. Porubsky issued plaintiff a notice of package/mail rejection for the May 2007 issue of King magazine. The notice advised plaintiff that the magazine was being rejected under Policy Directive 05.03.118 because it contained a hand sign or symbol of a security threat group. (docket # 1, Ex. D). Plaintiff requested a hearing on the rejection of this magazine. On April 4, 2007, plaintiff received a hearing. RUM W. Andersen was the hearing officer. Upon review, the hearing officer made the following finding: "Pg. 95 of the May King Magazine contains hand signs that are considered signs associated with a designated security threat group [under] PD 04.04.113." (docket # 1, Ex. I).

### C.    Players Girls Pictorial, Volume 27, Parts 9 & 10

On March 23, 2007, C. Porubsky issued a notice of package/mail rejection regarding "Pictorial V.27 # 9 & 10 [because] pages throughout this issue contain[ed] actual sex acts between men and women." (docket # 1, Ex. D). The magazine was rejected under P.D. 05.03.118 because the magazine contained photographs depicting actual or simulated sexual acts by one or more persons. (*Id.*). Plaintiff requested a hearing. On April 4, 2007, plaintiff received a hearing with RUM Andersen serving as the hearing officer. Defendant Andersen found that, "Pictorial vol. 27

# 9 and 10 [b]oth contain actual or simulated sex acts which is included in prohibited incoming mail per P.D. 05.03.118." (docket # 1, Ex. I).  The disposition portion of the hearing report stated that the magazine would be returned to the sender at the prisoner's expense.  (*Id.*).

On April 12, 2007, Prisoner John Henry Ray #233659 received a hearing on the rejection of Players Girls Pictorial volume 27, #'s 9, 10, and 11.   Officer B. Peet served as the hearing officer.  Peet found that volume 27 # 9 did not depict an actual or simulated sex act and he allowed Prisoner Ray to possess this magazine.  Officer Peet rejected  volume 27, #'s 10 and 11 because they contained photographs of actual and simulated sexual acts.  (docket # 25, Ex. D).

On April 11, 2007, plaintiff filed grievance number SLF 07-04-00525-28C.  Grievance Coordinator Sheets rejected the grievance because it raised multiple issues in violation of P.D. 03.02.130 (docket # 1, Ex. K).  Plaintiff filed a Step II appeal.  On May 30, 2007, Warden Lafler entered his Step II decision denying plaintiff's appeal.  He upheld the rejection of Players Girls Pictorial Volume 27, parts 9 and 10.  In response to plaintiff's argument that prisoner John Henry Ray had obtained a copy of volume 27 # 9, the Warden Lafler informed plaintiff that "the magazine in question [would] be retrieved from that prisoner." (docket # 1, Ex. K).  Plaintiff's Step III appeal was denied on July 31, 2007.  (*Id.*).

## D.    May/June Issue of Scratch XXL

On April 4, 2007, C. Porubsky issued a notice of package/mail rejection regarding the May/June issue of Scratch XXL magazine.[2]  The notice advised plaintiff that the magazine constituted prohibited incoming prisoner mail.  It was rejected pursuant to P.D.-05.03.118 because

---

[2]Plaintiff received the March/April issue of Scratch XXL magazine and he attached it to his complaint as an exhibit.  (docket # 1, ¶ 59 and Ex. N).

it contained multiple pages containing hand sign or symbols of a security threat group.  (docket # 1, Ex. D).  Plaintiff requested a hearing.  On May 10, 2007 Hearing Officer Andersen found that this magazine contained hand signs associated with STG's identified by the MDOC.  (docket # 1, Ex. I).

### E.    Players Girls Pictorial, Volume 27, Parts 6, 7, and 12

On May 4, 2007, M. Bennett issued a notice of package/mail rejection for "Pictorial magazine" volume 27, #'s 6, 7, and 12.  These magazines were rejected under PD 05.03.118 because they contained multiple pictures of sex acts.  (docket # 1, Ex. D).  On May 4, 2007, plaintiff requested a hearing on the rejection of these three magazines.

On May 11, 2007, plaintiff filed Grievance No. SLF-2007-05-0685-27B.  Grievance Coordinator Sheets rejected the grievance because it attempted to grieve non-grievable issues.  (docket # 1, Ex. K).  Warden Lafler upheld the rejection of this grievance at Step II, finding that plaintiff had attempted to grieve a non-grievable issued and that this grievance was duplicate of SLF-07-05-00525-28c.  (*Id.*).  On August 9, 2007,  plaintiff's Step III appeal of Grievance No. SLF-2007-05-0685-27B was denied.  (*Id.*).

Plaintiff filed this lawsuit on September 26, 2007.

### Discussion

### I.    Eleventh Amendment Immunity

Plaintiff's claims for monetary damages against defendants in their official capacities are barred by Eleventh Amendment immunity.  Eleventh Amendment immunity is a threshold issue that should be raised and decided by the trial court.  *See Nair v. Oakland County Cmty. Mental*

*Health Auth.*, 443 F.3d 469, 474 (6th Cir. 2006); *Rossborough Mfg. Co. v. Trimble*, 301 F.3d 482,

489 (6th Cir. 2002).  A suit against a state officer in his official capacity is simply another way of

pleading an action against the state.  *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71

(1989). The Eleventh Amendment generally[3] bars suit in federal court against a state and its

departments or agencies unless the state has waived its sovereign immunity or unequivocally

consented to be sued.  *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984);

*Skinner v. Govorchin*, 463 F.3d 518, 524 (6th Cir. 2006).  The State of Michigan has not consented

to civil rights suits in federal court.  *See Johnson v. Dellatifia*, 357 F.3d 539, 545 (6th Cir. 2004);

*Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986); *see also Hill v. Michigan*, 62 F. App'x 114,

115 (6th Cir. 2003).  Furthermore, States and their departments are not "persons" within the meaning

of 42 U.S.C. § 1983.  *See Will v. Michigan Dep't of State Police*, 491 U.S. at 71.  Defendants are

entitled to judgment in their favor as a matter of law on plaintiff's claims for monetary damages

against defendants in their official capacities.

This leaves plaintiff's claims against defendants in their personal capacity for

violation of his First and Fourteenth Amendment rights.

## II.     First Amendment

"A prison inmate maintains those First Amendment rights that are not inconsistent

with his status as a prisoner or with the legitimate penological objectives of the corrections system."

---

[3]The well-recognized exception to the general rule is an action for prospective, non-monetary relief such as an injunction against a state officer in his or her official capacity based upon a claim that the state officer's action is unconstitutional.  *See Ex Parte Young*, 209 U.S. 123 (1908); *see also Edelman v. Jordan*, 415 U.S. 651, 664 (1974); *Ernst v. Rising*, 427 F.3d 351, 358 (6th Cir. 2005)(*en banc*).

*Johnson v. California*, 543 U.S. 499, 510 (2005). "The Supreme Court has often reminded that courts are ill-suited to the inordinately difficult task of running a prison, and in general, should defer to the expert judgment of prison officials." *Sheets v. Moore*, 97 F.3d 164, 169 (6th Cir.1996) (citing *Thornburgh v. Abbott*, 490 U.S. 401, 409 (1989); *Turner v. Safley*, 482 U.S. 78, 84-85 (1987); *Jones v. North Carolina Prisoners' Labor Union, Inc.*, 433 U.S. 119, 128 (1977); and *Procunier v. Martinez*, 416 U.S. 396, 405 (1974)). While there is no question that the First Amendment applies to a prisoner's receipt of incoming mail, *see Boswell v. Mayer*, 169 F.3d 384 (6th Cir. 1999); the Supreme Court has carefully examined the limitations of a prisoner's First Amendment right to receive publications within prison. The applicable standard is the deferential *Turner* standard: whether the challenged regulation is "reasonably related to legitimate penological interests." *Thornburgh v. Abbott*, 490 U.S. at 413.

### A.     Facial Validity of MDOC's Policy

It is unclear from plaintiff's complaint whether he is making a facial challenge to the constitutionality of Policy Directive 05.03.118, ¶¶ HH, subparts fifteen and twenty-two, or an applied challenge, or both. For analytical purposes, I assume that plaintiff intended both a facial and an applied challenge.

A facial challenge to the policy "must be rejected unless there exists no set of circumstances in which the [policy] can constitutionally be applied." *Dean v. McWherter*, 70 F.3d 43, 45 (6th Cir. 1995); *see also Reno v. Flores*, 507 U.S. 292, 301 (1993). Consequently, this is the "most difficult type of challenge to mount successfully," since the challenger must establish that no set of circumstances exists under which the policy would be valid. *United States v. Salerno*, 481

U.S. 739, 745 (1987).  In evaluating a facial challenge, the court must consider any limiting construction applied by enforcement officials.  *Ward v. Rock Against Racism*, 491 U.S. 781, 795-96 (1989).

Paragraph HH of Policy Directive 05.03.118 states, "Prisoners are prohibited from receiving mail that is a threat to the security, good order, or discipline of the facility, may facilitate or encourage criminal activity, or may interfere with the rehabilitation of the prisoner.  The following pose such risks within a correctional facility under all circumstances and therefore shall be rejected." (emphasis added).  Subpart fifteen prohibits "photographs depicting actual or simulated sexual acts by one or more persons.  This includes photographs in a publication sent directly from the publisher or a vendor authorized by the facility."  Subpart twenty-two prohibits introduction of "Mail depicting a sign or symbol of a security threat group designated pursuant to PD 04.04.113 'Security Threat Groups.'"  Plaintiff's facial challenge must establish that no set of circumstances exists under which the policy could be constitutionally applied.

The challenged provisions of the policy directive easily survive plaintiff's facial challenge.  The myriad of problems gangs pose for prison administrators are well documented:[4]

> Institution security is threatened by the presence of gangs because of the direct threat of gang violence, and because gangs undermine prison authority by providing a support system for taking a stance that is in opposition to the prison administration. The presence of gangs in prison is detrimental to individual prison inmates and to the prison system as a whole. Affiliation with gangs in the correctional setting is not in the best interest of the offender and his rehabilitation.  Gang members themselves are physically endangered by the presence of

---

[4]"Prisons, by definition, are places of involuntary confinement of persons who have demonstrated proclivity for anti-social criminal, and often violent, conduct.  Inmates have necessarily shown a lapse in ability to control and conform their behavior to the legitimate standards of society by the normal impulses of self-restraint; they have shown an inability to regulate their conduct in a way that reflects either a respect for the law or an appreciation of the rights of others."  *Hudson v. Palmer*, 468 U.S. 517, 526 (1984)).

rival groups.  In addition, their chances of rehabilitation are fatally compromised, as gangs are antisocial and are frequently involved in criminal activities.

Persons entering prison for the first time who were members of street gangs usually will affiliate with members of those gangs who are also incarcerated.  New inmates who were never affiliated with street gangs often find themselves pressured into joining a gang inside the prison, especially if the new inmate is perceived as having had power and resources on the outside.  Gangs inside the prison have ways and means of providing gang members with goods and services, such as drugs, alcohol, food, and sexual favors, as well as protection against members of other gangs.  Procuring these goods and services violates institution policies and procedures as well as state laws.

*Singer v. Frank*, No. 05-c-1040, 2007 WL 2220209, at * 6 (E.D. Wis. July 31, 2007)(internal citations omitted).  "Inmates will attempt to form a gang under the guise of a seemingly harmless activity, such as a game, hobby or religious affiliation, etc."  *Id.* at * 8.  Gangs attempt to communicate covertly within a prison system through signs and symbols.  These signs and symbols are not static; prison officials learn to recognize them through their daily interaction and observation of prisoners.  Prison officials are afforded significant deference regarding determinations that magazines contain gang symbols. *Koutnik v. Brown*, 456 F.3d 777, 785 (7th Cir. 1987); *George v. Tritt*, No. 05-C-403, 2007 WL 5329354, at * 2 (W.D. Wisc. Jan. 10, 2007) (upholding prison regulation excluding magazines that contain depictions of gang-signs or gang-signing).

The United States Court of Appeals for the Sixth Circuit has upheld the challenged policy directive provision prohibiting prisoners from receiving mail depicting gang signs or symbols. *See Harbin-Bey v. Rutter*, 420 F.3d 571 (6th Cir. 2005).  The Court of Appeals held that the policy directive is reasonably related to the State's legitimate goal of maintaining prison security and order. *Id.* at 579.  There is no basis in this case for a contrary result.

The Sixth Circuit has upheld Michigan's policy directive provision prohibiting the introduction of magazines containing actual or simulated sexual acts:

>[T]he MDOC policy did not violate the First Amendment because: (1) it was rationally related to the goal of a safer prison environment; (2) prisoners had alternative means of acquiring sexually explicit materials such as written descriptions of sex acts and nude photographs that do not depict sexual acts; (3) accommodating the prisoners' right to receive sexually explicit materials in the form of photographs of sexual acts could adversely affect prison guards, other inmates, and the allocation of prison resources by creating a sexually charged atmosphere; and (4) redacting every publication containing photographs that violate the rule is not a ready alternative to disposing of the offending magazines because of the administrative burden of case-by-case redaction. *See Turner v. Safley*, 482 U.S. 78, 90-91, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987). Although Rogers argued to the contrary, the defendants were not required to submit evidence that the banned materials actually caused problems in the past or are likely to cause problems in the future, as long as it is plausible that they believed the policy would further a legitimate objective. *See*, *e.g.*, *Mauro v. Arpaio*, 188 F.3d 1054, 1060 (9th Cir.1999).

*Rogers v. Martin*, 84 F. App'x. 577, 579 (6th Cir. 2003); *see also Bahrampour v. Lampert*, 356 F.3d 969, 974-76 (9th Cir. 2004). Other courts have upheld far greater restrictions. *See e.g.*, *Jones v. Salt Lake County*, 503 F.3d 1147, 1152-56 (10th Cir. 2007)(upholding a prohibition against sexually explicit material); *Munro v. Tristan*, 116 F. App'x 820 (9th Cir. 2004)(upholding California Department of Corrections policy prohibiting sexually explicit material containing frontal nudity); *Dixon v. Cline*, No. 08-3078-SAC, 2008 WL 3285258 (D. Kan. Aug. 6, 2008)(upholding the rejection of King and XXL magazines because they contained partially bare buttocks, specifically females "in thongs and boy shorts" in violation of prison regulations).

In summary, the United States Court of Appeals for the Sixth Circuit has upheld both policy directive provisions plaintiff is challenging in this lawsuit. Defendants Caruso, Lafler, and Anderson are entitled to judgment in their favor as a matter of law on plaintiff's First Amendment claims challenging the State's policy directive.

       B.     Plaintiff's "As Applied" First Amendment Challenge

Plaintiff's "as applied" challenge requires relatively little discussion. Plaintiff did not present evidence of the actual content of any of the rejected magazines. He argues that, "There is no difference in prisoner's possessing publications that contain simulated sex acts, either way the female gender is still nude, and the imagination or idea's [sic] of the prisoner will result in the same behavior." (Plaintiff's Brief at 4). The State of Michigan and the Court of Appeals disagree. It is patent that there is a difference between nudes and depictions of an actual or simulated sexual acts. Plaintiff's argument that he finds "no difference" between nudes and depictions of sex acts significantly undermines any claim by plaintiff that he has suffered a constitutionally significant deprivation by the State's rejection of magazines containing depictions of actual of simulated sex acts.

Plaintiff alleges that mailroom staff members Bennett, Porubsky, and Hull were not "properly interpreting what simulated sex acts are." (Compl., ¶ 26). Plaintiff presented no evidence supporting his allegation. Even assuming arguendo that defendants Bennett, Porubsky, and Hull had been negligent in their enforcement of the MDOC's policy directive when Players Girls Pictorial Volume 27, parts 6, 7. 9, 10 and 12 were rejected, that would be insufficient to support claims of constitutional dimension against these defendants. There is no evidence that hearing officers Ritz and Andersen erred in rejecting any of the magazines at issue, much less that their decisions resulted in violations of plaintiff's First Amendment rights. Director Caruso, Warden Lafler, and Mailroom Supervisor Hull cannot be held liable in a section 1983 action under a *respondeat superior* theory for the alleged wrongdoings of their subordinates. *See Rizzo v. Goode*, 423 U.S. 362-375-76 (1976); *Phillips v. Roane County, Tn.*, 534 F.3d 531, 543 (6th Cir. 2008); *Grinter v. Knight*, 532 F.3d

567, 575 (6th Cir. 2008); *see also McCarty v. Doe*, No. 07-1037, 2008 WL 2660860, at * 2 (6th Cir. July 7, 2008).

Plaintiff's claims against Grievance Coordinator Sheets based on her rejection of his grievances and his claims against Warden Lafler based on his denials of plaintiff's grievance appeals fail to state a claim of constitutional dimension. *See Skinner v. Govorchin*, 463 F.3d 518, 525 (6th Cir. 2006). A prisoner has no constitutional right to any effective grievance procedures or access to any such procedure voluntarily established by the state. *See Hewitt v. Helms*, 459 U.S. 460, 467 (1983); *Argue v. Hofmeyer*, 80 Fed. Appx. 427, 430 (6th Cir.2003); *Carpenter v. Wilkinson*, No. 99-3562, 2000 WL 190054, at *2 (6th Cir. Feb.7, 2000); *Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir.1996); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir.1994)(collecting cases).

Defendants are entitled to judgment in their favor as a matter of law on all plaintiff's First Amendment claims.

### III.    Equal Protection

Plaintiff alleges that defendants Caruso, Lafler, and Hull violated his Fourteenth Amendment rights under the Equal Protection Clause. (Count I, Complaint). "The Equal Protection Clause commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws.' This provision creates no substantive rights." *Vacco v. Quill*, 521 U.S. 793, 799 (1997)(quoting *San Antonio Independent School Dist. v. Rodriguez*, 411 U.S. 1, 33 (Stewart, J., concurring)). "Instead, it embodies a general rule that States must treat like cases alike but may treat unlike cases accordingly." *Vacco*, 521 U.S. at 799 (quoting *Plyler v. Doe*, 457 U.S. 202, 216 (1982)

("[T]he Constitution does not require things which are different in fact or opinion to be treated in law as though they were the same.").

> The Equal Protection Clause of the Fourteenth Amendment commands that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1.  As we have explained, "to withstand Fourteenth Amendment scrutiny, statutes that do not interfere with fundamental rights or single out suspect classifications must bear only a rational relationship to a legitimate state interest." *Jackson v. Jamrog*, 411 F.3d 615, 618 (6th Cir.2005) (quoting *Richland Bookmart, Inc. v. Nichols*, 278 F.3d 570, 574 (6th Cir.2002)). The district court concluded properly that plaintiffs are not members of a suspect class and that they do not allege a violation of a fundamental right. "Without question, prisoners are not considered a suspect class for purposes of equal protection litigation." *Jackson*, 411 F.3d at 619; *see also Wilson v. Yaklich*, 148 F.3d 596, 604 (6th Cir.1998).

*Michael v. Ghee*, 498 F.3d 372, 379 (6th Cir. 2007).  Prisoners are not a suspect class.  *Id.*; *see Hampton v. Hobbs*, 106 F.3d 1281, 1286 (6th Cir.1997); *see also Figel v. Overton*, 121 F. App'x. 642, 648 (6th Cir. 2005); *Henry v. Metropolitan Sewer Dist.*, 922 F.2d 332, 341 (6th Cir.1990); *accord Does v. Munoz*, 507 F.3d 961, (6th Cir. 2007).

Plaintiff alleges that defendant Caruso "has approved the restriction of mostly all African American oriented magazines in [the] Michigan Department of Corrections restricted publications list." (Compl., ¶ 24).  Plaintiff states that "within this list, XXL, King, Vibe and Source, are all African American oriented."  (*Id.*).  Plaintiff made a selected excerpt of the May 2007 "Restricted Periodicals Index S-Z" an exhibit to his complaint.  (docket # 1, Ex. C).  This list not only includes the four magazines listed by plaintiff, but also includes issues of Sports Illustrated, U.S. News and World Report, Wired, and a section of U.S.A. Today.  (*Id.*).  The deputy director of Corrections Facility Administration (CFA) is and has been the person responsible for determining whether a publication will be added to the MDOC's restricted publications list.  (P.D. 05.03.118, ¶¶

PP-RR (effective January 1, 2006), docket # 26, Ex. A).  There is no evidence that Defendant Caruso

placed any of plaintiff's rejected magazines on the restricted publications list.

Plaintiff's complaint that Director Caruso did not respond to his grievances and his

request for a declaratory ruling (Compl., ¶ 55) falls far short of alleging a viable Equal Protection

Clause claim.  On April 9, 2007, plaintiff signed a two-page document he labeled as a "Request for

Declaratory Ruling [Mich. Comp. Laws §] 791.1115."  (docket # 1, Ex. B).  The MDOC's Office

of Legal Affairs received this document on April 13, 2007.  The April 13, 2007 letter from Richard

Stapleton, Administrator of the MDOC's Office of Legal Affairs advised plaintiff, "If you do not

receive a ruling within 30 days of receipt of your request, you may consider your request as denied,

pursuant to Administrative Rule 791.1115.  (docket # 1, Ex. B).  Since March 5, 2007, all prisoner

grievances in Michigan must be filed at Step I of the grievance process.  Prisoners may not file

grievances directly to Step III for any reason.  (docket # 1, Ex. M; *see also* P.D. 03.02.130, ¶¶ Q, R,

V (effective July 9, 2007)).

Plaintiff makes a passing argument that defendants Caruso, Lafler, and Andersen

violated his rights under the Equal Protection Clause because Officer Peet did not reject prisoner

John Henry Ray's Players Girls Pictorial Volume 27, part 9.  (Plf. Brief at 11, docket # 26).

Immediately after plaintiff brought this discrepancy to the warden's attention, Warden Lafler directed

that the above-referenced magazine be taken from prisoner Ray.  Defendants Lafler, Andersen, and

Caruso are all entitled to judgment in their favor as a matter of law on plaintiff's claims under the

Fourteenth Amendment's Equal Protection Clause.

Plaintiff did not expressly allege that defendants Hull, Porubsky, and Bennett violated

his rights under the Equal Protections Clause. (Compl., ¶ 84-94).  However, his brief makes it clear

that he is now attempting to assert such a claim.  (docket # 26 at 9-10).  Paragraph 36 of plaintiff's complaint alleges that these defendants allowed "white oriented heterosexual magazines that displayed actual or simulated sex acts, but continue to reject all African American heterosexual magazines . . . ."  (Compl., ¶ 36).  In paragraph 89, plaintiff alleges that the defendants "allow all white oriented sexual magazines in the prison, but reject/censor all plaintiff's African American oriented sexual magazines."  (*Id.*, ¶ 89).  Plaintiff states, "Magazines such as 'Playboy' issue July/August 2005, contains all white women performing simulated sex acts on pages 17, 32, 33, 35, 36, 45, 51, and 91" and that the January 2007 issue of Playboy "contains actual sex acts on pages 125, 127, and 151, but yet they were not rejected."  (*Id.*, ¶ 36).  Plaintiff has not supported his allegations with evidence, thus sparing the court the sordid task of comparing pages from the two old issues of Playboy against plaintiff's unspecified "African American oriented sexual magazines," presumably referring to an issue or issues of Players Girls Pictorial.

In summary, I find that no reasonable trier of fact could find in plaintiff's favor on any claim under the Fourteenth Amendment's Equal Protection Clause and that defendants are entitled to judgment in their favor as a matter of law on these claims.

## IV.    Qualified Immunity

Defendants' motion for summary judgment requests entry of judgment in defendants' favor on qualified immunity grounds.  "The purpose of the qualified immunity defense is to protect public officials from undue interference with their duties and from potentially disabling threats of liability."  *Perez v. Oakland County*, 466 F. 3d 416, 426 (6th Cir. 2006); *see Vakilan v. Shaw*, 335 F.3d 509, 516 (6th Cir. 2003).  When a defendant raises the defense of qualified immunity, the

plaintiff bears the burden of demonstrating that the defendant is not entitled to qualified immunity. *See Haynes v. City of Circleville*, 474 F.3d 357, 362 (6th Cir. 2007); *Baker v. City of Hamilton*, 471 F.3d 601, 605 (6th Cir. 2006); *Silberstein v. City of Dayton*, 440 F.3d 306, 311 (6th Cir. 2006).

In *Harlow v. Fitzgerald*, 457 U.S. 800 (1982), the Supreme Court held that "government officials performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Id.* at 818; *see Hudson v. Hudson*, 475 F.3d 741, 744 (6th Cir. 2007). The question whether qualified immunity attaches to an official's actions is a purely legal issue for the court. *See Fox v. DeSoto*, 489 F.3d 227, 235 (6th Cir. 2007); *Swiecicki v. Delgado*, 463 F.3d 489, 497 (6th Cir. 2006); *Summers v. Leis*, 368 F.3d 881, 885 (6th Cir. 2004).

The Supreme Court's decision in *Saucier v. Katz*, 533 U.S. 194, 200-01 (2001), emphasized that the defense of qualified immunity[5] must be addressed in proper sequence. The initial inquiry must be whether the plaintiff has alleged and supported with evidence facts showing that the defendants' conduct violated a constitutional or statutory right. *Saucier*, 533 U.S. at 201; *see Scott v. Harris*, 127 S. Ct. 1769, 1774 (2007); *Marvin v. City of Taylor*, 509 F.3d 234, 244 (6th Cir. 2007); *Silberstein v. City of Dayton*, 440 F.3d at 311. "Whether a constitutional violation

---

[5]A qualified immunity defense can be asserted at various stages of the litigation, including the summary judgment stage. *See English v. Dyke*, 23 F.3d 1086, 1089 (6th Cir. 1994). The qualified immunity inquiry at the summary judgment stage is distinguished from the Rule 12(b)(6) stage in that generalized notice pleading no longer suffices, and the broader summary judgment record provides the framework within which the actions of each individual defendant must be evaluated. *See Riverdale Mills Corp. v. Pimpare*, 392 F.3d 55, 62 (1st Cir. 2004). At the summary judgment stage, a plaintiff may not rely on his pleadings. Rather, the issue is whether "the plaintiff has offered sufficient evidence to indicate that what the official did was objectively unreasonable in light of the clearly established constitutional rights." *Champion v. Outlook Nashville, Inc.*, 380 F.3d 893, 905 (6th Cir. 2004).

occurred is a threshold issue: if the officers' conduct violated no constitutionally protected right,

there is no need for further analysis."   Because plaintiff has failed to present evidence on which a

reasonable trier of fact could find in his favor on any of his claims, defendants are entitled to

judgment in their favor on the alternative ground of qualified immunity.

### Recommended Disposition

For the reasons set forth herein, I recommend that defendants' motion for summary

judgment be granted and that judgment be entered in favor of the defendants on all plaintiff's claims.

Dated:   November 24, 2008          /s/  Joseph G. Scoville
                                    United States Magistrate Judge

### NOTICE TO PARTIES

Any objections to this Report and Recommendation must be filed and served within
ten days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b).  All
objections and responses to objections are governed by W.D. MICH. LCIVR 72.3(b).  Failure to file
timely objections may constitute a waiver of any further right of appeal.  *See Thomas v. Arn*, 474
U.S. 140 (1985); *Neuman v. Rivers*, 125 F.3d 315, 322-23 (6th Cir.), *cert. denied*, 522 U.S. 1030
(1997); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).